■ HENRY H. RICE, Respondent, v RITZ ASSOCIATES, INC., Appellant. — Judgment, Supreme Court, New York County (Kirschenbaum, J.), entered June 23, 1981, after Bench trial, unanimously reversed, on the law and the facts, and judgment directed in favor of defendant-appellant dismissing the complaint, with costs. Plaintiff-respondent is the owner of a parcel of real estate forming the northeast corner of 57th Street and Park Avenue in Manhattan, on which, as well as on a contiguous parcel, is located the prestigious building called Ritz Tower, owned and operated by defendant-appellant corporation under ground lease from plaintiff. The original such lease was made in 1922, four years before the building's completion, with the then predecessor owner of the realty; it expired in 1956, when it was renewed to run until May 31, 1978, with an option to renew "with like covenants and conditions except as to the amount of rent reserved." Elaborate and specific machinery was provided in the lease for fixing the rent, to be an annual stated percentage of an appraisal of the ground value set by a panel appointed for the purpose. Each party was to select a "fit and impartial person to determine the actual value of the land * * * considering it as a vacant piece or parcel of land at its full and fair worth at private sale free from encumbrances." It is to be noted at the outset that this standard eliminates virtually all the indicia of value of a piece of land usually considered in arriving at such a valuation. It was further provided that, if the two originally selected appraisers disagreed, a third was to be vouched in by the two, with the agreement of any two of the three to be controlling. The two disagreed widely, but did agree upon a third man to join the panel. He came in with a third figure, joined in, after consultation with the newcomer, by one of the appraisers. Thus, a decision was arrived at in the manner provided by the lease. Plaintiff sued to set aside the appraisal and won judgment accordingly. We reverse and reinstate the appraisal. The issue is simple: was the appraisal arrived at in accordance with

the procedures set out in the contract of lease? It is to be remembered that appraisers faced with the contract's unusual standard of evaluation can do little more than make an educated guess at what a naked piece of land at a certain location is worth. Plaintiff's argument, for instance, that the appraisers did not consider the impact of rental return from a restaurant located on the subject plot is, in the circumstances, a complete irrelevancy. This is also true of a complicated argument having to do with air rights and setbacks above the parcel. All that we may be concerned with is whether the appraisers acted honestly and in good faith, in the exercise of their wide discretion as to methods of procedure and sources of information. (See *Omaha Water Co. v City of Omaha,* 162 F 225.) There was no showing otherwise. In addition, plaintiff claimed that the value found by the appraisers was tied to a date not within the time frame stated in the pertinent paragraph of the lease; this is just not so, and, interestingly enough, that date was agreed upon by all three appraisers. The fact that the two of the appraisers who agreed conferred out of the presence of the third is of no significance in an appraisal, as distinguished from an arbitration. (See *Matter of Delmar Box Co. [Aetna Ins. Co.],* 309 NY 60.) The appraisal, made pursuant to a contract that the agreement of two of the panel constituted a binding and conclusive decision, should not be set aside except for fraud, bias or bad faith. (*Moore v Eadie,* 245 NY 166.) "[T]he parties by the lease had submitted this question for final determination to appraisers, not to the courts" (*supra,* at p 174), and in the absence of any evidence of the operation of any of these factors, the appraisal should stand. Concur — Murphy, P. J., Kupferman, Ross, Markewich and Asch, JJ.